COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and Senior Judge Humphreys
Argued at Leesburg, Virginia


DARREN NATHANIEL DAVIS

MEMORANDUM OPINION* BY
v.          Record No. 0351-23-4                    JUDGE VERNIDA R. CHANEY
JANUARY 28, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James E. Plowman, Jr., Judge

Paul C. Galanides for appellant.

Katherine Quinlan Adelfio, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


A jury convicted Darren Nathaniel Davis of first-degree murder, armed burglary, and

conspiracy to commit armed burglary. Code §§ 18.2-22, -32, -91. Davis argues that the trial court

erred in refusing to strike a juror for cause. Finding no abuse of discretion in the court's denial, this

Court affirms the trial court's judgment.

BACKGROUND[1]

On the first day of trial, the court informed the prospective jurors that Davis and his

co-defendant Jose Vidal Pereira were both charged with murder, armed burglary, conspiracy to

---

*This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "This Court reviews the facts in the light most favorable to the Commonwealth, the
prevailing party" below. *Commonwealth v. Carter*, 79 Va. App. 329, 334 (2023). "We 'regard
as true all credible evidence favorable to the Commonwealth and all inferences that may
reasonably be drawn from that evidence.'" *Id.* (quoting *McGowan v. Commonwealth*, 72
Va. App. 513, 516 (2020)).

commit burglary, and use of a firearm in the commission of a felony.[2]  The trial court advised the prospective jurors that the court and the parties would be asking them questions and that the questions were meant "to ferret out any potential bias that may be present, any bias for any of the parties."  The trial court then asked the potential jurors if any of them had expressed or formed an opinion as to Davis's guilt or innocence, if they were sensible to any bias or prejudice against the parties, and if anyone knew of any reason they could not give a fair and impartial trial based solely on the law and the evidence.  No one answered yes to any of those questions.

When Pereira's counsel asked if anyone had been the victim of a burglary, Juror F.[3] answered that she had.  Pereira's counsel asked Juror F. about her experience, and she responded, "That was about 30 years ago, someone broke into my home and stole . . . the jewelry and everything.  And then also, maybe it was 15 years ago, someone broke into my husband's car and stole money."  Pereira's counsel asked Juror F. if "anything about those experiences [that] you feel would cause you to be biased or prejudiced against the defense in this case, knowing what the charges are?"  Juror F. responded, "No."  Pereira's counsel then asked the jury pool:

> Follow up to that, has anyone here had a family member or a close friend been the victim of a burglary for which they feel like that incident is sort of fresh in their mind right now, and might cause them to have any issues being fair in this case knowing that one of the charges is burglary?
>
> Does anyone have that sort of close-to-home experience with a friend or family member of a burglary that they feel might cause them any prejudice or to be biased against the defense in a case like this?  No hands?  Okay.
>
> Has anyone been the victim of a violent crime, a crime where there was a stabbing, a shooting, a violent crime involving a serious injury, has anyone been the victim of any such crime like that?  Okay.  No hands?

---

[2] The trial court later dismissed the firearm charge on a motion to strike.

[3] For the sake of privacy, we use the juror's last name initial.

This is a murder case. Has anyone here have [sic] any family members or close friends who have been killed, been killed and murdered or have been the victims of, you know, a serious violent crime?

Juror F. indicated that the last question was relevant to her and stated, "Yeah, my youngest brother[,] he was killed when, you know, when someone tried to rob, tried to grab things and the guy st[u]ck a knife into his . . . . It was a robbery. It was when he was in the middle school." Juror F. stated, "That was I would say 35-40 years ago."

The following colloquy then occurred:

> [Pereira's counsel]: Okay. Does any of that experience do you feel would cause you any issues being fair and unbiased if you were to sit on the jury in this case, would that cause you to be prejudiced or biased against the defense at all?
>
> JUROR F.: No.
>
> [Pereira's counsel]: No. You think you could be fair and judge this case based solely on the evidence that you hear in this court?
>
> JUROR F.: Yes.

After asking if anyone else's friends or family had been the victim of a murder or another serious violent crime, Pereira's counsel stated:

> I expect that there's going to be—the circumstances of this case— there's going to be a lot of emotion that, you know, you might hear about in this courtroom.
>
> So my question to you is does anyone feel like they have any concerns about putting aside emotional responses to someone being killed, someone being murdered and still being able to decide whether the Commonwealth has proven beyond a reasonable doubt that Mr. Pereira or Mr. Davis are guilty of these offenses?
>
> Does anyone feel like any sort of emotional response might—that they have might interfere with their ability to be jurors to provide a verdict based solely on the evidence in this case? And I know there's been some responses to this from, I think, a couple people back here. But does anybody else have that type of concern?

Juror F. did not respond affirmatively to this question.

- 3 -

At the end of voir dire, Davis moved to strike Juror F. for cause because her brother had been the victim of a "murder-robbery" and was "concerned about somebody that has a family member that close when we're trying basically the same issue. I think she would have trouble hearing this and being unbiased." The prosecutor noted that Juror F.'s brother had been killed "35 to 40 years ago" and that Juror F. had said "she could be fair." The trial court responded, "Yeah. She didn't give any indication that that would impact her." The prosecutor further noted, "She said she was burglarized 15 years ago, but also . . . indicated she could be fair." The trial court denied Davis's motion to strike and noted his exception. Davis used a peremptory strike to remove Juror F. The jury convicted Davis on all charges, and Davis timely appeals.

ANALYSIS

Davis contends that the trial court erred by refusing to strike Juror F. for cause. He argues that it was unreasonable for the trial court to accept Juror F.'s assertion that the violent death of her brother would not hinder her from being a fair and impartial juror. He further maintains that Juror F.'s experience as a victim of a burglary "should have added certainty to the decision that she was not capable of being unbiased in this case." We note first that exercising a peremptory strike—as Davis did here—does not render harmless an error in denying a motion to strike for cause. *See, e.g.*, *Winston v. Commonwealth*, 32 Va. App. 864, 869 (2000). Even so, viewing the voir dire in its entirety, this Court finds no error in the trial court's refusal to strike Juror F. for cause.

"The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012). Thus, "[e]very prospective juror must stand indifferent to the cause, 'and any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" *Id.* at 23 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 298 (1976)). "If there be a reasonable doubt whether the juror possesses these qualifications, that doubt is sufficient to insure his exclusion." *Id.* (quoting *Breeden*,

217 Va. at 298). We apply these principles "strictly," "and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Id.* "The opinion entertained by a juror, which disqualifies him, is an opinion of that *fixed character* which repels the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011) (quoting *Justus v. Commonwealth*, 220 Va. 971, 976 (1980)). "Thus, 'the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial.'" *Id.* (quoting *Cressell v. Commonwealth*, 32 Va. App. 744, 761 (2000)).

This Court accords great deference to a trial court's determination of a juror's impartiality, reviewing it for an abuse of discretion. *Harvey v. Commonwealth*, 76 Va. App. 436, 454 (2023). "An abuse of discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision." *Warren v. Commonwealth*, 76 Va. App. 788, 799 (2023) (quoting *Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013)). This standard of review recognizes that "conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* (quoting *Thomas*, 62 Va. App. at 111). Because the "trial judge has the opportunity, which we lack, to observe and evaluate the apparent sincerity, conscientiousness, intelligence, and demeanor of prospective jurors first-hand, the trial court's exercise of judicial discretion in deciding challenges for cause will be not disturbed on appeal, unless manifest error appears in the record." *Jackson v. Commonwealth*, 267 Va. 178, 191 (2004) (quoting *Pope v. Commonwealth*, 234 Va. 114, 123-24 (1987)). "A manifest error occurs when the record shows that a prospective juror cannot or will not lay aside his or her preconceived opinion." *Taylor v. Commonwealth*, 67 Va. App. 448, 456 (2017).

In this case, we find no manifest error in the trial court's ruling. The record shows that during group voir dire, all jurors were informed of the nature of Davis's charges and that he pleaded not guilty. The voir dire established that none of the jurors had "a personal or other interest in the outcome of the case," that none of the jurors had acquired any information about the case or formed an opinion as to Davis's guilt or innocence, that none of the jurors was aware of any bias or prejudice against any of the parties in the case, and that none of the jurors knew of any reason they could not render a fair and impartial verdict. While Juror F. stated that she was the victim of burglary, her husband was the victim of a robbery, and her brother the victim of a murder, those facts did not automatically disqualify her from serving on the jury. *See Stockton v. Commonwealth*, 241 Va. 192, 200 (1991) ("[A] prospective juror [is not] *per se* disqualified because a family member has been a victim of violent crime."). The incident involving Juror F.'s husband occurred 15 years ago, the other two incidents occurred more than 30 years ago, and Juror F. repeatedly stated that they would not affect her ability to remain unbiased and impartial or interfere with her ability to judge the matter fairly upon the law and the evidence.

Davis argues that it was unreasonable for the trial court to conclude that Juror F.'s denials of bias and prejudice were accurate "[g]iven the tragic and similar nature of the events she has experienced in her life." The record reflects, however, that Juror F. did not express any unease or apprehension when Pereira's counsel stated that the case would invoke "a lot of emotion" and inquired if anyone had concerns about putting aside their emotional responses "to [testimony about] someone being killed." Rather, without hesitation, Juror F. asserted that those events would not interfere with her ability to judge the matter fairly. While Davis questions the truthfulness of Juror F.'s answers, he did not during voir dire inquire about the significance of those events to Juror F., nor did he explore the "inherently devastating" effect on her "entire family." We cannot, therefore, conclude that the trial court abused its discretion in accepting the sincerity of Juror F.'s answers on

appeal. Indeed, in ruling on Davis's motion to strike Juror F. for cause, the trial court observed that "she didn't give any indication" that those events would "impact her." Therefore, we find no error in the trial court's refusal to strike Juror F. for cause. Nothing in the record supports the assertion that Juror F. held an opinion of such a fixed character as to compromise the presumption of Davis's innocence, or to suggest to us that he stood "condemned already" in her sight. *Justus*, 220 Va. at 976 (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)).

In sum, this Court, therefore, affirms the trial court's assessment of Juror F.'s "'competency to serve impartially' because this finding was not plainly wrong or without evidence to support it." *Keepers v. Commonwealth*, 72 Va. App. 17, 44 (2020) (quoting *Garcia v. Commonwealth*, 60 Va. App. 262, 270 (2012)). Because the record supports the trial court's determination that Juror F. could serve as an impartial juror, we affirm its denial of Davis's motion to strike Juror F. for cause.

CONCLUSION

For these reasons, this Court finds no abuse of discretion in the trial court's judgment and accordingly affirms Davis's convictions.

*Affirmed.*